In the United States District Court
Western District of Virginia
Danville Division

Anthony Burtt,
Plaintiff,

v. Civil Action No. 4:07cv00038

Ford Motor Company, et al.
Defendants.

# *Burtt's Memorandum in Support of his Motion for Partial Summary Judgment against Barkhouser Motors*

Burtt has moved for partial summary judgment against Barkhouser Motors. While summary judgment at this stage is somewhat irregular, Barkhouser has filed its answer and counterclaim, which reveals that there is no genuine issue of material fact as to a very dispositive issue in the case that would short circuit much unnecessary litigation. Based on its statements in its Answer and Counterclaim, Barkhouser knowingly and intentionally violated a written agreement to resolve a consumer dispute, an action which is declared by the VCPA to be a fraudulent act.

## *Material Facts*

1. Barkhouser Motors is a corporation with an address of 3604 Riverside Dr., Danville, Va. Complaint 5, Barkhouser's Answer, 5, Counterclaim 1.

2. On or about February 22, 2007, Burtt purchased a 2007 F-250 crew cab from Barkhouser. Barkhouser's Answer, 9. A copy of the Buyer's Order and credit contract for that transaction is attached as Exhibit A.

3. That purchase was for family, personal or household purposes. Credit Contract,

Exhibit A.

4. Subsequent to the purchase, Burtt complained to Barkhouser about experiencing difficulties with the 2007 F-250. Counterclaim 2.

5. Barkhouser contacted Ford and proposed the possibility of Ford considering a reacquisition of Burtt's 2007 F-250 and allowing him to select a replacement vehicle on terms consistent with Ford's typical reacquisition procedures. Counterclaim 3.

6. Barkhouser a received the 'Reacquired Vehicle Transaction Procedures" documentation. {RVTP} Barkhouser Answer, 19. True and accurate copy, Burtt Declaration, Exhibit C.

7. The RVTP documents speaks for themselves. Ford Answer, 19.

8. The RVTP sets forth what documents are necessary, what the dealer is to sign and not sign, and where to send them. It represents that the dealer will be paid $400.00 for doing all of this. RAV, Exhibit B.

9. Ford moved forward with the acquisition. Burtt accepted Ford's terms. Counterclaim 4.

10. Barkhouser Motors worked with Burtt to make arrangements to order a substitute vehicle, a 2008 white Ford F-250. Counterclaim 4.

11. Barkhouser claims that the white truck was delivered to Barkhouser's lot

sometime during the time period of July and August, 2007. Counterclaim, 10, 11, 12.

12. In response to Burtt's immediate need for a truck to haul a trailer, on July 10, 2007, Powell told Burtt that he could come down to the lot and pick out a diesel on the lot and use as courtesy transportation in place of the Taurus until the paperwork was done for the allegedly ordered white 2008. At no time did Barkhouser reveal that it considered Burt's taking of this truck as an agreement to buy it, and at no time did Burt agree to buy the red truck. Declaration of Anthony Burtt, Exhibit C.

13. Barkhouser did not provide Burtt with a Buyer's Order on July 10, 2007 for the red truck. Barkhouser's Answer, 33.

14. On or about July 25, 2007, Burtt called Ford Credit, to whom he was making payments, and explained the situation. Ford's records already showed that the Deathtrap would be replaced by the ***<u>RED</u>*** truck. Burtt objected, saying that no, the Deathtrap would be replaced by the white truck he had ordered. Ford Credit did not know anything about any white truck ordered. Burtt began to smell a rat. Declaration of Anthony Burtt, Exhibit C.

15. On August 10, 2007, Powell called Burtt and asked him to come to Barkhouser Motors and sign the papers. Thinking that "papers" meant the ones for the white truck Burtt had ordered, Burtt agreed to come, but was not signing anything because the $5300.00 issue had not been cleared up. Barkhouser informed Burtt for the first time that he had to sign the papers for the ***<u>red</u>*** truck or have nothing to drive, as the temporary tags expired at midnight. Burtt had never agreed to buy the red truck verbally or in writing, seen any Buyers Order, nor other written agreement to buy the red truck, and of course refused to sign anything to buy a truck without knowing the essential terms

of the agreement, such as price, trade in allowance, and interest rate. Declaration of Anthony Burtt, Exhibit C.

16. Burtt went to Barkhouser Motors and told Powell he was not signing the papers for the red truck. Powell suggested that Burtt turn in the red truck and drive a loaner Taurus until it was all figured out. Burt agreed. Declaration of Anthony Burtt, Exhibit C. In Barkhouser's words, "the truck was returned to Barkhouser pending resolution of the dispute related to the reacquisition process." Counterclaim 14.

17. On or about August 10, 2007, Burtt told Powell that all that he wanted was the white truck that had been ordered, along the lines that Powell had set forth. Declaration of Anthony Burtt, Exhibit C. About an hour later, Powell informed Burt that he had to return the Taurus. Declaration of Anthony Burtt.

18. On or about September 5, 2007, Barkhouser gave Burtt notice that it would not replace the Deathtrap with the white truck, that it would only do so with the red truck, and that if he did not agree to that, the Deathtrap would not be replaced at all, and Barkhouser would sue him. Letter of September 5, 2007. Counterclaim 15.

19. The correspondence between counsel speaks for itself. Barkhouser's Answer, 53.

20. Burtt has not had the use of his $50,000 truck nor the monies paid therefor since late May, because Barkhouser took it away from him on the grounds it was unsafe to drive. Declaration of Anthony Burtt, Exhibit C.

## *Argument*

### Standard for summary judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages. The entry of summary judgment is inappropriate where there exists a genuine and material issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509–10, 91 L. Ed. 2d 202 (1986). Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment. Id. at 248, 106 S. Ct. at 2510. A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party." Id. Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the movant has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevent its entry. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 547, 586–87, 106 S. Ct. 1348, 1355–56, 89 L. Ed. 2d 538 (1986). It is not sufficient for the party opposing summary judgment to provide a scintilla of evidence supporting its case. Anderson v. Liberty Lobby, Inc., *supra*, 477 U.S. at 252, 106 S. Ct. at 2512. The nonmoving party may not thwart the purposes of Rule 56 by

creating issues of fact through affidavits that contradict its prior sworn statements. Military Serv. Realty v. Realty Consul. Of Va., 833 F.2d 829 (4th Cir. 1987).

As set forth below, no genuine issue of material fact exists that by refusing to replace with the white truck, Barkhouser willfully committed a fraudulent act in violation of the VCPA.

## I. Barkhouser violated the VCPA.

### A. The VCPA Generally

The Virginia Consumer Protection Act is violated when a seller commits even just a technical violation. Valley Acceptance Corp. v. Glasby, 230 Va. 422, 433 (1985). Proof of intent to deceive is not necessary for a finding that conduct is a deceptive practice in violation of the VCPA. All that must be shown is a tendency to mislead. Although this proposition is not explicit in the VCPA, it is readily inferable from the last clause of 59.1-207 which preserves the consumer's right to restitution even though the violation was unintentional. *Commonwealth v. Smoky Mountain Secrets, Inc*. Chancery No. HG162-1 (Richmond Cir. Ct., April 1, 1997).

Pursuant to Va. Code Sec. 59.1-204A, a VCPA defendant is liable for enhanced damages when its conduct is "willful." Under the law of the United States and Virginia, as expressed by their respective Supreme Courts, conduct is "willful" when it is intentional. *United States v. Murdock*, 290 U.S. 389, 394 (1933); *Lynch v. Commonwealth*, 131 Va. 762, 766, 109 S.E. 427, 428 (1921); *Snead v. Commonwealth*, 11 Va. App. 643, 646 -47, 400 S.E.2d 806, 807-08 (1991). An action is willful when the

actor intends to take the action, whether it knows the legal consequences of that action or not. *RF&P Corporation v. Little*, 247 Va. 309, 309, 440 S.E.2d 908, ___ (1994).

**B. Barkhouser violated the VCPA**

As set forth on the credit contract for the Deathtrap in Exhibit A, that transaction was for personal, family or household purposes, and accordingly that transaction was a consumer transaction under Va. Code Sec. 59.1-198. Also under that section, Barkhouser was a "supplier" in that consumer transaction.

In its RVTP, Exhibit B, first page, Ford says that it will require Barkhouser to obtain Burtt's signature on a "signed …release." On the second page, addressed to Anthony Burtt, Ford says that its letter is "written confirmation of the vehicle replacement offer that has been extended to you." Clearly, this constitutes a written offer to resolve a dispute that arises in connection with a consumer transaction, viz., Burtt's February 2007 purchase of the Deathtrap.

Barkhouser has admitted that Burtt accepted Ford's terms, and that Ford moved forward with the replacement. Counterclaim 4. It would do so by replacing the Deathtrap with a 2008 white Ford F-250. Counterclaim 4.

Even though that white truck had landed on Barkhouser's lot allegedly in July or August, and was at hand, Barkhouser nevertheless refused to execute the replacement with the white truck. It refused on August 10, when it made Burtt return the red truck. It refused again on August 11, when it required Burtt to return the Taurus. It refused again in its letter of September 5, 2007.

Instead, Barkhouser knowingly and intentionally took the position that it was allowed to replace with the red truck or nothing at all, as shown by its September 5 2007 demand that if he did not agree to the red truck, he should remove the Deathtrap from its lot. In thrice refusing to complete the replacement with white truck, Barkhouser willfully and intentionally failed to adhere to the terms of the RVTP that it had generated.

This is a clear violation of Va. Code Sec. 59.1-200(17), which provides:

A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful:

…

> 17. If a supplier enters into a written agreement with a consumer to resolve a dispute that arises in connection with a consumer transaction, failing to adhere to the terms and conditions of such an agreement;…

For a period of almost a month, Barkhouser steadfastly refused to replace with the white truck, and then pulled the plug on the whole replacement. This is puzzling, as for that whole period, Barkhouser could certainly have gone forward with the white truck replacement, and then sued Burtt for exactly the same thing that it has counterclaimed against him for. Replacing with the white truck could not prevent then from seeking alleged damages for his alleged agreement to take the red truck. Instead, Barkhouser intentionally chose to stop the replacement rather than do so with the white truck.

Barkhouser's petulant refusal to offer up the white truck shows that it chose to violate the RVTP intentionally and willfully. This is a fraudulent act under the VCPA.

Burtt has suffered loss in that Burtt has lost possession and use of his $50,000 truck because Barkhouser took it away from him four months ago because it was unsafe. He has clearly suffered loss.

## II. Conclusion.

No genuine issue of material fact exists as to this issue, and summary judgment is proper.

Anthony Burtt

Elmer Woodard
Attorney at Law, P.C.
VSB 27734
105 S. Union St. Ste. 600
Danville, Va. 24541
434-793-0400
isuecrooks@verizon.net

CERTIFICATE OF SERVICE

The undersigned, being an attorney duly licensed to practice law in the State of Virginia, does hereby certify that a copy of the foregoing was duly served upon the opposing counsel this date as follows:

_______ By personally hand delivering a copy the same to him or to one of his employees at his office;

_______ By fax transmission;

XXX By electronic mail;

_______ By depositing a copy of same in the United States Mail, postage prepaid, and addressed as follows:

ADDRESSEE:

Ted Hodges
Clement & Wheatley
P.O. Box 8200
Danville VA
24541

Mike Doherty
WootenHart PLC
707 South Jefferson St.
Suite 300
Roanoke, Va. 24016

This Thursday, October 18, 2007.

Elmer Woodard