IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ANTHONY BURTT, ) | |
| ) | Case No. 4:07CV00038 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| FORD MOTOR COMPANY, et al., ) | |
| ) | By: Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

The case before me has been filed in this Court pursuant to the private cause of action under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2310 (2007). As detailed below, this Court does not have subject-matter jurisdiction over this action. Therefore, this case will be DISMISSED.

**I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This action concerns a dispute over a malfunctioning pickup truck manufactured by Defendant Ford Motor Company ("Ford"), sold by Defendant Barkhouser Motors, Inc. ("Barkhouser"), and purchased by Plaintiff Anthony Burtt ("Burtt"). Burtt's complaint, filed September 14, 2007, states "[t]he truck cost $50,575.54." (Compl. ¶ 9.) On October 18, 2007, Burtt filed a Brief in Support of a Motion for Summary Judgment Partial re Barkhouser Motors. Attached to that Brief was the Buyer's Order, which provided details of the purchase. The truck itself was priced at $42,889.00. After taxes and fees, the total cost was $44,824.45. Burtt paid $1,852.00 that day, and took advantage of a $300.00 rebate. Burtt also traded in an older Ford F250 pickup truck. The dealership appraised this older truck at $29,000.00. However, Burtt still owed $37,003.09 on that truck. Therefore, his trade-in had $8,003.09 of negative equity. Rolling this negative equity into the purchase left a balance due of $50,675.54.

1

Burtt's only Federal cause of action is the MMWA. On November 8, 2007, I requested, *sua sponte,* briefs on the following questions:

1) How the amount in controversy requirement of MMWA should be calculated and whether it has been met in this case; and

2) Whether, under the MMWA and the contracts and warranties involved herein, Plaintiff is required to exhaust alternative remedies before proceeding in this Court?

Briefs on both of these issues have now been received. On January 28, 2008, I held a hearing on these issues. I granted Plaintiff leave to amend the Complaint, so that he could detail the requested relief. Plaintiff filed his Amended Complaint on February 1, 2008. Because resolution of the amount in controversy question necessitates dismissal of this case, the alternative remedy issue is not discussed further.

**II.    DISCUSSION**

The question here is whether Burtt has satisfied the requirements of the MMWA. If it appears to a legal certainty that he has not, I must dismiss this case due to lack of subject matter jurisdiction. *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957).

The MMWA allows suit to be brought "in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. §2310(d)(1)(B) (2007). Paragraph three explains:

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

15 U.S.C. § 2310(d)(3) (2007).

"All claims" has uniformly been held not to include plaintiff's full demand. *Donahue v. Bill Page Toyota, Inc.,* 164 F.Supp.2d 778, 783 (E.D. Va. 2001). Thus it is necessary to determine which

claims are included and which are not.  Attorney's fees and costs cannot be used to fulfill the jurisdictional amount. *Saval v. BL Ltd.,* 710 F.2d 1027, 1032 (4th Cir. 1983).  Further, pendent state law claims may not be applied. *See Donahue*, 164 F.Supp.2d at 782.  Thus, Burtt must be seeking $50,000 in damages only under the MMWA. *Collins v. Computertraining.com, Inc.*, 376 F.Supp.2d 599, 602 (E.D. Va. 2005).

As both Ford and Burtt point out, courts have used differing methodologies in calculating these damages.  These calculations are governed by state law, except where expressly restricted by the MMWA.  *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004).  Ford urges use of Section 8.2-714 of the Code of Virginia.  Part of the Uniform Commercial Code as adopted by Virginia ("U.C.C."), § 8.2-714 states:

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

VA. CODE ANN. § 8.2-714(2) (2001).  Further, "in a proper case any incidental and consequential damages under [§ 8.2-715] may also be recovered."     VA. CODE ANN. § 8.2-714(3).

On the other hand, Burtt suggests following the Virginia Lemon Law, codified in § 59.1-207.13.  Under that Section, the consumer has an unconditional right to a refund of the "full contract price, including all collateral charges, incidental damages, less a reasonable allowance for the consumer's use of the vehicle up to the date of the first notice of nonconformity."  VA. CODE ANN. § 59.1-207.13(2) (2006).

Regardless of the section used to calculate damages, Burtt's claims fall short of the jurisdictional amount.  A typical automobile contract that includes a trade-in is the merger of two interconnected agreements.  The first is the price of the new car; the second is the value of the trade-in.  Assume Buyer trades in a vehicle worth twenty thousand dollars ($20,000), which he owns

3

without liability, and buys a vehicle for sixty thousand dollars ($60,000). Thus, he owes forty thousand dollars ($40,000). Were he to sue on a rescission or breach of warranty claim, the calculations of damages under either formula would begin from the $60,000 price of the vehicle. The equity in the traded vehicle would be immaterial.

A similar result follows where such equity is negative rather than positive. The damages must begin at the price paid for the vehicle, regardless of the negative equity involved. Just as including positive equity from a trade-in would unfairly harm the Buyer, including negative equity unfairly harms the Seller.[1] The damages calculation here, taken without regard to trade-in or cash paid on signing, is $44,524.45 (the Total Delivered Price minus the Rebate). Therefore, under either method of calculation, the total MMWA claim cannot reach the required $50,000 jurisdictional requirement on the contract price alone.

Further, a question remains whether unpaid future interest charges should be included in the calculation. In *Golden v. Gorno Bros., Inc.*, the customer purchased a Ford Mustang for approximately $43,000 via a retail installment contract which included more than $14,000 in finance charges. 410 F.3d 879, 880 (6th Cir. 2005). The court concluded that "the finance charges of a contract should not be added when determining if the amount in controversy has been satisfied." *Id.* at 885. "Certainly, the question of whether federal jurisdiction exists under the [MMWA] should not be determined by whether a finance contract was used in purchasing an automobile." *Id.* at 883.

A contrary conclusion was reached in *Roberts v. Chandaleur Homes, Inc.*, 237 F.Supp.2d 696 (S.D. Miss. 2002). There, a mobile home was purchased for $30,496, but the total payments under the agreement were in excess of $120,000. *Id.* at 697. The court there reasoned that the pecuniary consequence of rescission on one party was sufficient to satisfy the jurisdictional amount.

---

[1] In other words, if before the sale Burtt's liabilities were $8,000 more than his assets, the same should be true after recission.

4

This approach is flawed. First, *Roberts* relies heavily on *Edwards v. Bates County*, 163 U.S. 269 (1896), for the proposition that interest should be included in the calculation. However, *Edwards* concerns a claim for payment under matured interest coupons. *Id.* at 269–70. This is wholly different from the future unpaid interest at issue here.

Second, the result in *Roberts* does not adequately account for the economic reality of the time-value of money. The pecuniary result of rescission of a contract which pays $100,000 in total payments over ten future years is not $100,000. This number must be reduced by a discount factor to appreciate its present value. The most obvious discount factor to use in a random contract is the interest rate arrived at in negotiations between the parties, which accounts for the risk of the market and the risk of lending to this particular borrower.[2] Using this interest rate as the discount rate reverts the present value of the contract to the principal amount due. I therefore agree with the *Golden* court and conclude that future unpaid interest due in the installment contract should not be included in the calculation of the jurisdictional requirement.

Even were I to take a contrary view, the result in this case would be unchanged. Here, Burtt received a finance rate of 2.9%. According to the Retail Installment Sale Contract, this would cost Burtt a total of $4,658.62 in finance charges.[3] Combined with the $44,524.45 above, the result remains below the jurisdictional requirement.

Lastly, Burtt, in his brief supporting jurisdiction, provides a laundry list of incidental and consequential damages that also may arise in warranty actions. (Pl. Br. 6–7.) As explained earlier, state law is to be relied on in calculating damages only in the absence of coverage by the MMWA. *Schimmer*, 384 F.3d at 405. Section 2304(a)(3) of the MMWA, which relates to *full* warranties,

---

2 Certainly there is also profit value involved as well. However, in the absence of more specific evidence, this is the most logical discount rate.
3 That calculation accounts for the full Amount Due on Delivery of $50,675.54

5

Case 4:07-cv-00038-JLK-mfu   Document 68   Filed 02/11/08   Page 5 of 9   Pageid#: 611

provides that a "warrantor may not exclude or limit consequential damages . . . unless such exclusion or limitation conspicuously appears on the face of the warranty." This provision, however, does not require that any exclusion or limitation of consequential or incidental damages appear conspicuously on the face of a limited warranty. 16 C.F.R. § 701.3(a)(8).

This gap in coverage by the MMWA has led at least one court to conclude that such decision should thus depend on state law. *Sheehan v. Monaco Coach Corp.*, No. 04-C-717, 2006 WL 208689, *10 (E.D.Wis. Jan. 25, 2006). However, this conclusion simply revives an issue raised earlier: Whether the U.C.C. or Virginia Lemon Law is the proper statute for application here.

The U.C.C. as adopted by Virginia allows incidental and consequential damages to be recovered in an action for breach of warranty. VA. CODE ANN. § 8.2-714(3). However, such damages may be limited or excluded unless the limitation or exclusion is unconscionable. VA. CODE ANN. § 8.2-719(3). By contrast, Virginia Lemon Law explicitly allows for recovery including incidental damages, and "mileage, expenses, and reasonable loss of use necessitated by attempts to conform such motor vehicle to the express warranty." VA. CODE ANN. § 59.1-207.13(A)(2).

There is no case law to dictate which statute to use in this scenario, so I must determine which statute most closely reflects the purpose and structure of the MMWA. The Lemon Law deals only with the very narrow category of automobile issues. By contrast, the U.C.C., like the MMWA, is a general statute relating to all consumer goods. I am therefore persuaded that the U.C.C. approach is proper. Several other factors support this conclusion.

First, Congress has explicitly endorsed the use of limitations or exclusions of consequential or incidental damages for full warranties. 15 U.S.C. § 2304(c). Logic dictates that a limitation that a warrantor is allowed to make on full warranties would similarly be endorsed for limited warranties. After all, the greater includes the lesser.

6

Second, this analysis comports with the purpose of this section of the MMWA – to provide meaningful barriers to federal court for "trivial or insignificant actions." H.R.Rep. No. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7724. Were incidental and consequential damages allowed in the calculation, virtually every vehicle purchased could satisfy the jurisdictional amount with similar claims as have been produced here. Here, Burtt has filed an Amended Complaint and included the following damages: $720 of insurance, $16,500 in cover damages for a 2001 truck, $1,232 for two bedliners, $1,000 for a trailer hitch, $5,250 in lost wages, $17,242 in lost use, and $16,000 in aggravation. The total for these damages alone exceeds $50,000. (Amended Comp. ¶ 56b.) Allowing these damages would make the price of the vehicle irrelevant, an outcome contrary to the purpose of the jurisdictional limitation. This analysis parallels the rationale for prohibiting aggregation of related state claims. *See Donahue*, 164 F.Supp.2d at 782.

Third, this interpretation is supported by the Federal Trade Commission's treatment of these limitations in the Code. Section 701.3(a)(8) covers "any exclusions of or limitations on relief such as incidental or consequential damages." Full warranties must comply with 15 U.S.C. § 2304, which requires exclusions of consequential or incidental damages to appear on the face of the warranty. "On the face of the warranty" is defined in 16 C.F.R. § 701.1(i). Notably, Section 701.3(a)(8) does not require the limitations or exclusions to appear on the face. Thus, limitations or exclusions other than those for full warranties must have been contemplated.

This is especially notable in light of §701.3(a)(7), which explicitly requires limitations on the duration of implied warranties to appear on the face of the warranty. Thus, if the Federal Trade Commission had wanted to require the exclusions of §701.3(a)(8) to appear on the face of the warranty as defined in §701.1(i), it certainly knew how to accomplish this.

Lastly, it is axiomatic that "statutes conferring jurisdiction on federal courts are to be strictly

7

construed, and doubts resolved against federal jurisdiction." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 (5th Cir. 1984). For these reasons, consequential and incidental damages should rely on the limitations test from § 8.2-719(3), allowing such limitation unless it is unconscionable.

Ford's exclusion of incidental and consequential damages is not unconscionable. Section 8.2-710(3) provides that a limitation of "consequential damages for injury to the person is prima facie unconscionable." No personal injuries are claimed here. Further, this Circuit has held that an agreement is unconscionable where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Carlson v. General Motors Corp.,* 883 F.2d 287, 292-93 (4th Cir. 1989) (quoting *Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C. Cir.1965)). Factors to be considered include "the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause." *Carlson*, 883 F.2d at 293.

Certainly, Ford is the more sophisticated party and the clause involved here was non-negotiable short of Burtt refusing the purchase. On the other hand, Burtt's injuries here are purely economic and the clause referenced is not only conspicuous, but in plain language. In a boxed and shaded section, the owner's booklet provides:

> Ford and your dealer are not responsible for any time or income that you lose, any inconvenience you might be caused, the loss of your transportation or use of your vehicle, the cost of rental vehicles, fuel, telephone, travel, meals, or lodging, the loss of personal or commercial property, the loss of revenue, or for any other incidental or consequential damages that you may have.

(Def. Br. on Jurisdictional Issues, Ex. 1, 8.) This statement is conspicuous and uses simple and readily understood language. I find that application of these limitations in this case is not

8

unconscionable.  Therefore, consequential and incidental damages are properly excluded from the jurisdictional requirement calculation.

**IV.    CONCLUSION**

The calculation of the jurisdictional amount must be based on the guidelines set forth above. Doing so demonstrates to a legal certainty that Burtt cannot meet the jurisdictional requirement of the MMWA.  For this reason, this case will be DISMISSED for lack of subject-matter jurisdiction.

Entered this 11th day of February, 2008.

s/Jackson L. Kiser  
Senior United States District Judge